```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
BRIAN JOHNSON,                        :   11 Civ. 4435 (AT) (JCF)
                                      :
              Plaintiff,              :        REPORT AND
                                      :      RECOMMENDATION
      - against -                     :
                                      :
CITY OF NEW YORK, OFFICER MICHAEL     :
GABRIEL, Shield # 01733, and          :
OFFICER RONALDCAR JUAN, Shield #      :
20878,                                :
                                      :
              Defendants.             :
- - - - - - - - - - - - - - - - - - -:
```
TO THE HONORABLE ANALISA TORRES, U.S.D.J.:

Plaintiff Brian Johnson, proceeding pro se, filed this action against the City of New York and Officers Michael Gabriel and Ronald Carlos Juan (erroneously sued as Officer Ronaldcar Juan) of the New York City Police Department pursuant to 42 U.S.C. § 1983. The plaintiff alleges that his constitutional rights were violated when he was subject to "false arrest, illegal profiling, malicious prosecution, and defamation of character" in connection with his August 1, 2009 arrest on charges stemming from an incident on or near the grounds of the Gouverneur Morris I Houses (also known as the Morris Houses and the Claremont Houses) in the Bronx. (Second Amended Complaint ("2nd Am. Compl."), §§ II, V). The defendants have moved for summary judgment. I recommend granting the motion.

Background

The following facts are taken largely from the defendants' Statement of Undisputed Facts.[1]  (Defendants' Statement of

---

[1] On January 22, 2014, the defendants filed this motion for summary judgment, which included the notice required by Local Civil Rule 56.2 that the plaintiff may not oppose a motion for summary

1

Undisputed Facts Pursuant to Local Rule 56.1 ("Def. 56.1 Statement").

On the morning of August 1, 2009, Mr. Johnson was on Washington Avenue in the vicinity of the Morris Houses, when he saw Anthony Dunstan, who, like the plaintiff, lived in the neighborhood. (Def. 56.1 Statement, ¶¶ 3-6). Also on that morning, NYPD Detective Jeffrey McAvoy witnessed an assault while he was monitoring security videos from cameras on the grounds of the Morris Houses. (Def. 56.1 Statement, ¶¶ 7-8). He reportedly saw Mr. Johnson and Mr. Dunston engage in a fight, during which Mr. Johnson cut Mr. Dunston's face with a weapon. (Def. 56.1 Statement, ¶ 9). The detective called for assistance. (Def. 56.1 Statement, ¶ 8). When Officers Gabriel and Juan responded, he described the men involved in the fight and noted the direction the perpetrator had gone on Washington Avenue. (Def. 56.1 Statement, ¶¶ 8-9; Declaration of Michael Gabriel dated Jan 22, 2014 ("Gabriel

---

judgment merely by relying the allegations in his complaint and that failure to respond to the motion will subject his complaint to dismissal. (Statement Pursuant to Local Rule 56.2); see also Local Rules of the Southern and Eastern Districts of New York 56.2. The plaintiff did not file opposition papers by the date they were due. On March 4, 2014, I sua sponte extended the deadline for the opposition until March 31, 2014, and warned the plaintiff that if he failed to respond, the motion would be decided on the record before the Court. (Order dated March 4, 2014). The plaintiff again failed to submit opposition papers by the due date. I therefore deem the facts contained in the defendants' motion papers true, and decide the motion on the current record. See Almonte v. Public Storage Inc., No. 11 Civ. 1404, 2011 WL 3902997, at *2 (S.D.N.Y. Sept. 2, 2011) (where pro se plaintiff fails to oppose motion for summary judgment after having received notice that failure will subject complaint to dismissal, court may grant summary judgment where undisputed facts show moving party entitled to judgment as matter of law).

Decl."), attached as Exh. M to Declaration of Aimee K. Lulich dated Jan. 22, 2014 ("Lulich Decl."), ¶ 3). Following this lead, Officers Gabriel and Juan located and arrested the plaintiff, who matched Detective McAvoy's description of the person seen cutting Mr. Dunstan on the surveillance video. (Def. 56.1 Statement, ¶ 10). They recovered a bag of marijuana from Mr. Johnson's pocket. (Def. 56.1 Statement, ¶ 11). Before taking Mr. Johnson to the precinct, the officers brought him before Detective McAvoy, who identified him as the person he saw cutting Mr. Dunstan. (Def. 56.1 Statement, ¶ 13).

The next day, Mr. Johnson was arraigned on charges of assault in the second and third degrees, criminal possession of a weapon in the fourth degree, unlawful possession of marijuana, and harassment in the second degree. (Def. 56.1 Statement, ¶ 16). Less than two weeks after his arraignment, Mr. Johnson was indicted on two counts of attempted assault in the first degree, three counts of criminal possession of a weapon in the third degree, three counts of criminal possession of a weapon in the fourth degree, and one count each of assault in the second degree and assault in the third degree. (Def. 56.1 Statement, ¶ 18; Indictment dated Aug. 14, 2009, attached as Exh. J to Lulich Decl.). He was released on bail on December 4, 2009. (Def. 56.1 Statement, ¶ 19). The charges against him were dismissed on speedy trial grounds in September 2010. (Def. 56.1 Statement, ¶ 20).

Discussion

    A.   Summary Judgment Standard

    Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Doninger v. Niehoff, 642 F.3d 334, 344 (2d Cir. 2011). A dispute regarding a material fact is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); accord SCR Joint Venture LP v. Warshawsky, 559 F.3d 133, 137 (2d Cir. 2009), and a material fact is one that "'might affect the outcome of the suit under the governing law,'" Roe v. City of Waterbury, 542 F.3d 31, 35 (2d Cir. 2008) (quoting Anderson, 477 U.S. at 248). "In deciding whether a genuine dispute exists, a court must 'construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant.'" Seeman v. Local 32B-32J, Service Employees Union, 769 F. Supp. 2d 615, 620 (S.D.N.Y. 2011) (quoting Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003)).

    The moving party bears the initial burden of identifying those portions of the record that demonstrate "the absence of a genuine issue of material fact," Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986), following which the opposing party must "'come forward with specific facts showing that there is a genuine issue for trial,'" Wrobel v. County of Erie, 692 F.3d 22, 30 (2d Cir. 2012)

(emphasis omitted) (quoting Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)), and "cannot rest on the mere allegations or denials of his pleadings," Almonte, 2011 WL 3902997, at *2 (internal quotation marks omitted).  The parties can support their claims with discovery materials, stipulations, affidavits, or other evidence, see Fed. R. Civ. P. 56(c)(1)(A); however, "only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment," Presbyterian Church of Sudan v. Talisman Energy, Inc., 582 F.3d 244, 264 (2d Cir. 2009) (internal quotation marks omitted).  Thus, the parties cannot rely on "'conclusory allegations or unsubstantiated speculation'" to support or defeat a motion for summary judgment. Jeffreys v. City of New York, 426 F.3d 549, 554 (2d Cir. 2005) (quoting Fujitsu Ltd. v. Federal Express Corp., 247 F.3d 423, 428 (2d Cir. 2001)).

A pro se litigant's submissions should be read liberally and interpreted "'to raise the strongest arguments that they suggest.'" Fulton v. Goord, 591 F.3d 37, 43 (2d Cir. 2009) (quoting Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001)).  Nevertheless, proceeding pro se does not relieve a litigant from the usual requirements of summary judgment.  See Wolfson v. Bruno, 844 F. Supp. 2d 348, 354 (S.D.N.Y. 2011).  As noted above, where a pro se plaintiff fails to oppose a motion for summary judgment after having been warned of the consequences of such a failure, "summary judgment may be granted as long as the Court is satisfied that the undisputed facts 'show that the moving party is entitled to

5

judgment as a matter of law.'"  Almonte, 2011 WL 3902997, at *2 (quoting Champion v. Artuz, 76 F.3d 483, 486 (2d Cir. 1996)).

    B.   Section 1983

Section 1983 does not, itself, provide substantive rights. Rather, it merely "authorizes a cause of action based on the deprivation of civil rights guaranteed by other Acts of Congress" and the Constitution.  Chapman v. Houston Welfare Rights Organization, 441 U.S. 600, 618 (1979); see Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993) ("Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere.").  In order to show a violation of the statute, a plaintiff must establish that he has been deprived of his civil rights by a state actor.  42 U.S.C. § 1983; see also Torraco v. Port Authority of New York & New Jersey, 615 F.3d 129, 136 (2d Cir. 2010) ("[Section 1983] allows parties to seek damages against state actors for alleged violations of federal rights."); Fisk v. Letterman, 401 F. Supp. 2d 362, 376 (S.D.N.Y. 2005) ("[A] claim under § 1983 is aimed at state action and state actors." (internal quotation marks and citation omitted)).  It is undisputed that the defendants qualify as state actors for the purpose of the statute, so the relevant question is whether there is a genuine issue of material fact about whether any of the defendants deprived Mr. Johnson of his civil rights.

    C.   City of New York

"[A] municipality can be held liable under Section 1983 if the deprivation of the plaintiff's rights under federal law is caused

by a governmental custom, policy, or usage of the municipality." <u>Jones v. Town of East Haven</u>, 691 F.3d 72, 80 (2d Cir. 2012). "Absent such a custom, policy, or usage, a municipality cannot be held liable on a <u>respondeat superior</u> basis for the tort of its employee." <u>Id.</u>; see also <u>Reynolds v. Giuliani</u>, 506 F.3d 183, 207 (2d Cir. 2007). "A municipal policy may be pronounced or tacit and reflected in either action or inaction," <u>Cash v. County of Erie</u>, 654 F.3d 324, 334 (2d Cir. 2011), and may be premised upon the actions of a policymaking individual, see <u>Walker v. City of New York</u>, 974 F.2d 293, 296-97 (2d Cir. 1992). However, allegations that revolve around a single incident, "especially if it involved only actors below the policymaking level," are generally insufficient to establish the existence of an official policy or custom. <u>Dwares v. City of New York</u>, 985 F.2d 94, 100 (2d Cir. 1993), <u>overruled on other grounds as recognized by</u> <u>Jean-Laurent v. Wilkerson</u>, 461 F. App'x 18, 22 (2d Cir. 2012); see <u>Parris v. New York State Department Correctional Services</u>, No. 12 Civ. 1849, 2013 WL 2257096, at *6 (S.D.N.Y. May 23, 2013); <u>Santos v. New York City</u>, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012).

Here, the plaintiff fails to allege any official policy or custom that violated his constitutional rights; indeed, the complaint is devoid of allegations against the City of New York. Mr. Johnson has not, therefore, adequately alleged municipal liability.

    D.   <u>False Arrest</u>

False imprisonment, "sometimes colloquially called . . .

7

'false arrest,'" Cameron v. Fogarty, 806 F.2d 380, 386 (2d Cir. 1986), "is an unlawful detention contrary to the will of the person detained, accomplished with or without process of law." Curley v. AMR Corp., 153 F.3d 5, 13 (2d Cir. 1998) (internal quotation marks omitted).  "Under New York law, the elements of a false imprisonment claim are: (1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." Singer v. Fulton County Sheriff, 63 F.3d 110, 118 (2d Cir. 1995) (alteration in original, internal quotation marks omitted). "The Fourth Amendment protects against unreasonable searches and seizures, including false arrests, by requiring probable cause to support the execution of any search or seizure." Golphin v. City of New York, 09 Civ. 1015, 2011 WL 4375679, at *1 (S.D.N.Y. Sept. 19, 2011).

Because the existence of probable cause makes a confinement privileged, it is "a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983." Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996)(internal quotation marks and citation omitted). "[W]hether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the [arresting] officers." Id. Additionally,

> The 'fellow officer' rule provides that even if an arresting officer lacks personal knowledge sufficient to establish probable cause, the arrest will be lawful if the officer acts upon the direction of or as a result of communication with a superior or [fellow] officer . . . provided that the police as a whole were in possession of

8

>   information sufficient to constitute probable cause to
>   make the arrest.

Annunziata v. City of New York, No. 06 Civ. 7637, 2008 WL 2229903, at *3 (S.D.N.Y. May 28, 2008) (first alteration in original) (internal quotation marks and footnote omitted).  "[T]he proper inquiry is whether the arresting officer acted reasonably, as opposed to whether probable cause actually existed or the vouching officer acted reasonably." Golphin, 2011 WL 4375679, at *2.

At the time that they arrested Mr. Johnson, Officers Gabriel and Juan had received a radio report of an assault from Detective McAvoy, who, having witnessed the assault on surveillance videotape, provided a description of the assailant, along with a statement that the alleged perpetrator had gone south down Washington Avenue following the incident. (Gabriel Decl., ¶ 3). Proceeding south on Washington Avenue, the officers found and arrested Mr. Johnson, who matched the description provided by Detective McAvoy. (Gabriel Decl., ¶ 4).  Given this information, Officers Gabriel and Juan acted reasonably in arresting the plaintiff.  See, e.g., Golphin, 2011 WL 4375679, at *1, 3 (actions deemed reasonable where arresting officer relied on information from officer who witnessed offense on surveillance video).

    D.   Racial Profiling

"An act of overt racial discrimination can provide the basis for a viable Fourteenth Amendment violation under the equal protection clause." Olivera v. Town of Woodbury, 281 F. Supp. 2d 674, 681 (S.D.N.Y. 2003).  The plaintiff does not allege a race-based police policy or claim disparate impact as a result of a

neutral policy. Rather, he appears to claim that in arresting and prosecuting him, the defendants engaged in racial profiling. He thus seems to be making a so-called "class of one" equal protection claim, which requires establishing that he "has been 'intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" Olivera, 281 F. Supp. 2d at 681 (quoting African Trade & Information Center, Inc. v. Ambromaitis, 294 F.3d 355, 362-63 (2d Cir. 2002)). However, Mr. Johnson has made no such allegations in his complaint (other than the mere mention of racial profiling (2nd Am. Compl., § V)), and has adduced no evidence supporting such a theory. This is therefore not a viable claim.

    E.    Malicious Prosecution

"The Fourth Amendment right implicated in a malicious prosecution action is the right to be free of unreasonable seizure of the person -- i.e., the right to be free of unreasonable or unwarranted restraints on personal liberty." Singer, 63 F.3d at 116. A malicious prosecution claim has four elements:

> (1) that the defendant initiated a prosecution against the plaintiff, (2) that the defendant lacked probable cause to believe the proceeding could succeed, (3) that the defendant acted with malice, and (4) that the prosecution was terminated in the plaintiff's favor.

Posr v. Court Officer Shield # 207, 180 F.3d 409, 417 (2d Cir. 1999). "Indictment by a grand jury creates a presumption of probable cause that may only be rebutted by evidence that the indictment was procured by 'fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith.'" Savino

v. City of New York, 331 F.3d 63, 72 (2d Cir. 2003) (emphasis omitted) (quoting Colon v. City of New York, 60 N.Y.2d 78, 83, 468 N.Y.S.2d 453, 456 (1983)).

The record establishes that Mr. Johnson was indicted for the offenses for which he was prosecuted. (Def. 56.1 Statement, ¶ 18; Indictment). There is no evidence that Officer Gabriel or Officer Juan procured the indictment by fraud, perjury, or suppression of evidence. As the defendants point out, the only suggestion that the prosecution was in any way irregular is Mr. Johnson's contention that the prosecutor knew he was innocent. (Memorandum of Law in Support of Defendants' Motion for Summary Judgment at 13; Excerpt from Transcript of Deposition of B. Johnson ("Johnson Dep."), attached as Exh. B to Lulich Decl., at 139). Not only is this insufficient to rebut the presumption of probable cause, but also it asserts no wrongdoing on the part of Officer Gabriel or Officer Juan, the individual defendants accused of maliciously prosecuting the plaintiff. I therefore recommend granting the motion for summary judgment as to the claim for malicious prosecution.

    F.   Defamation

"Defamation [] is an issue of state law, not of federal constitutional law, and therefore provides an insufficient basis to maintain a § 1983 action." Sadallah v. City of Utica, 383 F.3d 34, 38 (2d Cir. 2004). To the extent that Mr. Johnson seeks to allege a state law defamation claim, it is barred because the plaintiff admittedly did not file a notice of claim as required by state law.

(Def. 56.1 Statement, ¶ 22; Johnson Dep. at 149); N.Y. Gen. Municipal L. §§ 50-e, 50-i(1); <u>Fincher v. County of Westchester</u>, 979 F. Supp. 989, 1002 (S.D.N.Y. 1997) ("The notice of claim requirements apply [] to state tort claims brought as pendent claims in a federal civil rights action.").

Conclusion

I recommend granting the defendants' motion for summary judgment. Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Analisa Torres, Room 2210, and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007. Failure to file timely objections will preclude appellate review.

Respectfully Submitted,

*James C. Francis IV* (signature)

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
July 18, 2014

Copies mailed this date to:

Brian Johnson
1343 Washington Ave., #10A
Bronx, NY 10456

Aimee K. Lulich, Esq.
Assistant Corporation Counsel
100 Church Street
New York, New York 10007